We have one case this morning, number 18-1718, Silfab Solar, Inc. v. United States. Mr. Stahl. May it please the Court. This case is about the survival of three small Canadian manufacturers and importers of solar modules who are suffering job losses and lost business opportunities. And who are threatened with bankruptcy due to the President's unlawful safeguard tariff. We ask this Court to reverse and remand the Trade Court's erroneous denial of our motion for a preliminary injunction. This Court has emphasized the likelihood of success in the merits and irreparable harm prongs of the Court's four-part test for a preliminary injunction. Let me first turn to the likelihood of success, as that was the primary issue addressed below by the Trade Court. We have demonstrated that the President's safeguard is unlawful for two reasons. First, the President acted without a recommendation of the Commission. And second, the President acted when imports from Canada... Well, there was a recommendation, but not as to remedy, right? Sorry. There was a finding as to injury, but not as to remedy. That's correct, Your Honor. There was, in fact, a finding of serious injury, but the Commission did not make a recommendation of the Commission. And that is explicitly required, Your Honor, in the statute under... Well, three different Commissioners made recommendations. They just couldn't agree on the exact terms that were necessary to remedy the serious injury. Is that correct? That's correct, Your Honor. But Section 1330 of the Trade Act requires, Your Honor, that there either be a majority, as explicitly required by the statute, or a plurality of three. Here, Your Honor, we do not have either one of those, and thus I think it's... But where does the Act require that there have to be a recommendation that garners a majority prior to Presidential action? I see where the statute requires a finding of serious injury, but I don't see where the statute requires a recommendation before the President can act. Your Honor, I think the statute requires that in several specific areas. First, if you look at Section 2252F of the statute, the Commission must promulgate a report that must include a recommendation of the Commission. Okay, hold on. I've got my statute, 2252F. Okay, report by Commission, is that what you want me to look at? The title of that section is report by Commission? That's right, Your Honor. Okay. And F1 says that the Commission shall submit to the President a report. Then in F2A, Your Honor, it says the Commission shall include in the report, B, the recommendations made under Section E and an explanation of the basis for each recommendation. Now you might, Your Honor, wonder why it says recommendations. If you look at Section E, it talks first about a recommendation of the Commission. That could be, for example, a tariff rate quota. It also talks about certain other recommendations that it may make to the President. For example, it may suggest that he should conduct international negotiations or other things. But it's clear, Your Honor, that there has to be a recommendation of the Commission. That point is further explained in the... No, it's clear that a report by the Commission should contain, if there is a determination under B, which is the serious injury determination, then the recommendations, plural, for action made under subsection E of this section and explanation for a basis of each recommendation. It should also then contain any dissenting or separate views. So why don't we have a report which satisfies the requirements of F? We have a report in which each Commissioner lays out its recommendation and a number of separate views. That's right, Your Honor. We do have individual recommendations of the Commission, but we do not have a recommendation of the Commission. If you look at 2251A, which is what we dealt with in the course, I think, it does say that if there's a determination of serious injury, the President shall act. And we held that finding by the ITC about finding of serious injury was a predicate to Presidential action. But there's nothing in 2251A that says a recommendation is to be a predicate to Presidential action, right? No, Your Honor, but it does, in fact, say in the same section that his action can only be in accordance with this part. This part also encompasses section 202 of the Act, which, as I just was discussing with Judge Moore, requires that... Where does it say that the President can only... I'm sorry, Your Honor. Where does it say in 2251 that the President has to take certain action? Your Honor, the Statute says that he shall take all appropriate and feasible action. Immediately before... It says within his power, which the President determines. So it seems to me that the Statute gives the President discretion to determine what type of efforts to help the domestic industry they're going to take. I don't think that's right, Your Honor, and that's because if you look immediately before the language that you're talking about, it says in accordance with this part. Furthermore, if you look at other parts of the Statute, Your Honor, it says in 2253 that the President explicitly take into account the recommendation of the Commission. So it's very clear that Congress wanted him to take into account the recommendation of the Commission. Furthermore, Your Honor, if you look at... Yes, he takes into account recommendations of the Commission, but 2251 clearly states that it's within his power, which the President determines, will facilitate the efforts. It's up to the President to determine. Is it not? No, Your Honor. I think he can determine, but only in accordance with the provisions of the Statute. The Statute says that first he must take into account the recommendation of the Commission. It also says, for example... It doesn't say he has to obey the recommendation. It says take it into account. No, that's true, Your Honor, but if he disagrees with the Commission, he has to provide a report to the Commission of why he disagreed in detail. That's required by the Statute, and Your Honor, in chorus, this very Court discussed how the Commission has to explain itself and how it has to explain in detail the basis for its recommendation. So I think it's clear from the Statute and from this Court's holdings that it's more than just a question of serious injury. This Court said that the Commission's findings also have to be internally consistent. So the Commission... This Court was saying that you have to go beyond just a question of serious injury. It's a question of what the Commission actually says. And the Commission must make a finding... Excuse me, a recommendation, and very importantly, Your Honor, without a recommendation, Congress's ability to override the President would be disabled. Okay, so let's go to 2253A1A, and here it's referring to the report under Section 2251F, and it says, the President shall take all appropriate and feasible action. I'm assuming that the President decides what's appropriate and feasible within as far as the President determines. Again, it's up to the President to determine at that point what type of measures are going to be applied. We don't dispute the text of the statute, Your Honor, but the statute has multiple requirements. Yes, we don't dispute that the Commission needed to make a finding of serious injury in order for the President to act, but the President also had to take certain actions. He had to take account of the recommendation of the Commission. You're trying to cabin the President's authority to what the ITC recommends, correct? Basically, you're saying the President is pigeonholed by whatever the ITC wants to happen. No, that's quite right, Your Honor. What I'm saying is that he has, that the Commission's recommendation has to be taken into account. If he differs, which he certainly may, the statute certainly provides him with the ability to differ from the Commission. Whereas here, there is no Commission recommendation, is it your view that no presidential action would ever be appropriate under the statute in those circumstances? That is our view, Your Honor. How can that be? The statute in 2251A says if there's a finding of serious injury, the President shall take all appropriate and feasible actions. And so your view is a disagreement among the Commissioners over not the fact that there's agreement with, but a disagreement over what the appropriate recommended action ought to be handcuffs the President contrary to the clear mandate of the plain language of the statute. That is your view. Yes, Your Honor, and I think that that is because... Game over. I think, Your Honor, that is because it's not just about 2251. The statute has to be read as a whole. You can't pick isolated parts as the government has requested. Again, 2252A... Your reading of the statute is neither consistent with the plain language nor consistent with any rational policy that I can ascertain. Your Honor, let me add one practical point for your consideration. The statute provides that the Commission shall have 120 days to make a finding of serious injury, okay? But the Commission, but the statute also gives the Commission up to 180 days to make its recommendation and to issue its report. If the Congress wanted the President to be able to act without a recommendation, then they would have said after the finding of serious injury, which must happen within 120 days, the President can act. Instead, they explicitly conditioned his ability to act, per Judge Reina's comments, explicitly conditioned his ability to act on receiving the recommendation of the Commission. Why is that? Because the Commission is considered a body of experts, a body that the President must hear from in order to make his decision. The same provision, Judge Moore, that you're talking about also... And all those experts agree there's going to be substantial harm or injury here, and the statute says in that situation the President shall take all appropriate and that may be, Your Honor, but the conditions of 19 U.S.C. 1331 met, and there was not a recommendation of the Commission. To your point, Your Honor, if we can pick and choose from which statutory requirements to pick from, the statute also says in the same provision where it says that the President shall take into account the recommendation of the Commission, that he shall take into account the national defense. Are we here to suggest that the President... I'm not bothered by the word shall. I mean, it looks like the President's being directed to do something, but what does take into account mean? I can take your arguments today into account, but it doesn't mean I have to adopt them. I mean, it's still up to me to decide the case, right? That's right, Your Honor, except that the Congress explicitly, to use your word, cabined the President's authority. They said that if we find that the President has acted in a way that's different from the Commission, we reserve to ourselves the ability to pass a President's action. So very clearly in this instance, they were concerned about the President having absolute power to act, even when there was a finding of serious injury. If I can, I'd like to turn briefly, because I reserved three minutes of time for rebuttal, I'd like to turn briefly to our second argument, and that is that the President acted without a substantial share, without Canadian imports accounting for a substantial share. Here, Your Honor, the words that the President is required to exclude Canadian imports if there was a finding of either not being a substantial share or that Canadian imports did not account for, contribute importantly to the serious injury found by the Commission. Here, Canadian imports only accounted for one And, Your Honor, as we've said, this Court and the Supreme Court have said, substantial must be given meaning. It has to be considered whether it's important or whether it is a large number. So since the question of whether substantial was not met, the President has not acted in accordance with the statute. This Court, in chorus in many other cases, has explained that when the President has fundamentally misconstrued a statute by not giving meanings to the explicit words of the statute, that's a violation of law and cannot be upheld, Your Honor. As I said, I reserve three minutes of time for rebuttal. Okay. Ms. Davidson? Good morning, and may it please the Court. The trial court acted well within So, the Government agrees that the President had to make a substantial share finding, right? The Government, the President is required to make a substantial share finding, and the President made one. Okay. I guess my question is, how should I read that finding? Because here, the ITC made a specific determination that Canada did not constitute a substantial share. Should we read the President's determination of substantial share to rest on the Chairman's recommendation that there was a concern about a surge of imports in the future from Canada if Canada were not included? Is that how we should read the Presidential proclamation? Under the statute, the two requirements that the ITC look at substantial share and contribute importantly, and the President's... No, you're not answering my question. Those... You're not answering my question. I'm trying to, Your Honor. My question is, in the light of what the ITC said, should we read the Presidential proclamation's finding of substantial share as resting on the surge rationale that the Chairman articulated? There was one reason, one rationale. In the report to Congress, the President also noted concern for all of the FTA countries with the mobility of manufacturers in this industry, that this has already been a problem. No, but what's the answer to my question? Did the President rely on the three commissioners who... Should we read the proclamation, the finding of substantial share, in the proclamation as resting on the surge rationale? The President did not... The President said he took into... The answer is, I don't know, because it doesn't expressly say surge rationale. The President does say he considered the ITC's report, which would include all four commissioners, the Chairman, who did not find a substantial share, and the other three that did find substantial share, and then he made his own determination under the statute. In the report to Congress, the President mentioned that, in addition to making the finding, the concern with the mobility of this industry, that under the anti-dumping... This last thing you're talking about, the mobility of the industry, it goes to my question. Does the President consider... Can the President consider, in making his determination, factors or matters that are not included in the ITC report? Yes. Would that include, for example, the Trade Policy Staff Committee reports? Yes, under the statute, the President makes an independent determination. It's not dependent at all on the ITC's... The statute does not identify foreign relation matters as a factor the President could take into account, but the President didn't identify that. Is it your position that the President could take that into account? I think the President could take that into account, exercising his constitutional authority. Suppose we were to read the proclamation as resting on the surge rationale. Would that be lawful? Yes, it would be lawful. But the President did not expressly rely on the surge mechanism. He relied on the whole report. I'm confused. Isn't it the case that we're not to review factual determinations the President has made? I mean, this sounds like a factual determination. How can what share, what role you play in the injury be anything other than a factual determination? In this case, this claim is just like the claim in motion systems. Aren't we just supposed to make sure he follows all the proper procedural steps? That's our job as a review court, not to second guess the President when he makes a factual determination. Absolutely. Well, that may be true, but if the President rested on incorrect legal rationale, the cases suggest that there could be review. And what I'm trying to ask you is, if the proclamation rested on the surge rationale, we have a statute here which says that provides for surge remedies and it provides for surge remedies only after there has been a surge, not in anticipation of the surge. So I guess my question to you is, does that statute providing for presidential authority to remedy a surge cabin his authority here? No, that statute is not exclusive. It doesn't say that this is to the exclusion of all other remedies. And the President did not expressly rely on the surge problem, which all four commissioners noted. Well, suppose he had. Suppose he had said, I agree with the ITC that the Canadian imports do not now constitute a substantial share. And the basis for my action is concerns about future surges. Would that be a lawful action? I think it would be lawful because it would be a factual finding. This case is just like motion systems. No, no, no. It's not a factual finding. I'm saying, he says, this is my legal, my understanding of my legal authority. And I agree with the ITC that the Canadian imports do not now constitute a substantial share, but I am acting because of the possibility of a future surge.  But the President here did not identify surge as a reason. He identified the concern with mobility. Why would it be lawful for him to act because of the possibility of a future surge when the statute conveys authority only to take account of a surge when it occurs? Because those remedies are not exclusive, those surge remedies. That is one remedy for moving around and for surges in other countries. But there are other trade remedies that could apply in the case of surges, and none of them are exclusive. In fact, the domestic industry has obtained two anti-dumping duty orders and two countervailing duty orders already. But because of this mobility problem, the imports just keep flooding into the United States. And that's why they resorted to Section 201, the escape clause provision, when they had no other recourse. I also would like to go back to count one. But just to emphasize that on count three, the appellant's argument is just like motion systems. There too, the plaintiffs argued that the President must have construed the statute because on this record, he couldn't have reached the conclusion that the statute was met, that there was a substantial share. And that's exactly what they're arguing. But that is a factual review, a review of the President's exercise of discretion and fact-finding authority. There's no indication that the President- Did the USTR report address this issue, which is not part of the joint appendix here? The USTR sent a report to the press right after the ITC's report. Yes, that's a requirement under the statute. Did that report address this issue? Yes. What did it say about it? I don't have it with me. And I think we would have to consider whether that is deliberative, Your Honor. But if Your Honor would like- It's not a public document? No, it's not a public document. But if Your Honor would like us to request whether it could be provided to the court, I'd be happy to find out. No, it's not part of the record. It is a recommendation from the trade representative to the President. So, under your argument, can we ever review any proclamation issued by the President in a safeguards action? You could, as in KORUS, you could review a proclamation to determine if the serious injury requirement was met. That is the only precondition for action by the President under Section 201. And this court did review the ITC's injury determination in KORUS. But the President's decision itself is discretionary, as the trial court explained. And under every case decided by this court, going back to Florsheim, Maple Leaf, KORUS, motion systems, Michael Simon, presidential proclamations in the trade area that are reserved to the President's discretion are not reviewable. What's a situation where the President's authority would not be discretionary? I think with the injury determination. That is a clear requirement for the President to act. And that's why this court reviewed the injury determination. Is there any other situation other than just in the injury requirement? No, there were some temporal requirements, some limitations on the duration of the action. I haven't looked at that issue, so I don't want to concede that that would be an issue. But otherwise, I'm not aware of any. Section 2251 and 2253 are clear that once the Commission makes a finding of serious injury, the President must take action. This case is different from a lot of the earlier cases in that the standard that the President is applying is a standard that has judicially manageable standards, correct? I mean, unlike some of these other cases where the President was supposed to determine whether the tariffs were in the national interest or something like that, which is not a standard that a court could possibly apply. No, this is just like Michael Simon, which involved a recommendation to the President. No, no, no, wait, wait. The standard here is that if it were an agency determination about substantial share, that would be reviewable, right? There's a judicially manageable standard. If it were an agency determination, that were the issue before us, correct? If it were a precondition for the President's action, then it would be like the injury determination. I agree. But here, the statute requires the ITC to do one thing, to conduct this exercise, make a determination, report to the President. And then the President makes a separate determination on his own. I understand that. That's not my question. My question is that in terms of a judicially manageable standard, the substantial share standard of the statute is a judicially manageable standard. It's not like a standard that says the President shall make a determination whether tariffs are in the national interest, right? Well, it is a legal standard, but it isn't binding on the President and the appellants. Well, I understand that argument. The argument is that the statute, when it talks about a presidential determination, makes the President's determination unreviewable to a large extent. But if we were reviewing an ITC determination with a substantial share standard, we could review that. We'd know what to do, right? Right. Although here, because it's not a precondition, there'd be no reason to. But it's a legal standard. Because the statute speaks in terms of a presidential determination, the argument is it's not reviewable, as opposed to an agency determination. Correct. I would like to emphasize on count one that this Court has never enjoined the President from providing emergency relief for an industry or enjoined any presidential proclamation in the trade area. And the trial court was absolutely within its discretion to deny a request for the extraordinary remedy of preliminary injunctive relief until the Court could consider the case. And the case flow is continuing. If this Court were to agree with the plaintiffs that they are likely to succeed and that the public interest favors their cause, both of which the trial court, in a very well-reasoned decision, found otherwise, then the only recourse would be a remand for further proceedings on irreparable harm and balance of interests. The government reserved its right to counter the irreparable harm allegations three times on the record. And we've never had a chance to. We've identified some of the information we would submit if we had a chance, showing that the appellants, far from suffering, are a global conglomerate and are planning to expand and are doing quite well financially, notwithstanding the tariffs. And as the trial court said in chorus, the imposition of extraordinary relief, like the safeguard, is going to cause economic harm to importers. That's always going to be the case. So in this case, this case became expedited. That's why we reconstituted ourselves and are holding it in special session. Thank you. I assume both parties would be very grateful for extremely quick and prompt resolution of this case. Is that right? Is there a lot hanging on this? Excuse me? There's a lot probably hanging on this decision that needs to be resolved quickly. Well, anytime there's a presidential action that's been challenged, we would like a quick resolution. And the proceedings below are continuing. So what is happening in the trade court now? We are filing cross motions on the merits of the case. Is there any factual issue on the merits? No, not yet. Not yet? I can't imagine one, but one hasn't arisen yet. I mean, we're still briefing, and the appellants have not responded to our motion. I don't know if they're going to raise a factual issue. OK. But for those reasons, as well as those set forth in our brief, we respectfully ask that you affirm the judgment below, if not, to remand for further proceedings. OK. Thank you. Mr. Henderson? May it please the court. We've already stated, summarized in our brief, why we think the commission's action fully complied with the statute in this case, including the commission's remedy recommendations. But we'd like to see our understanding of the appellant's argument is that despite the fact that the commission remedy recommendations are in no way binding on the president, and that notwithstanding counsel's argument, there is no requirement in the statute that a majority of the commissioners agree on a recommendation that there be a remedy finding of the commission agreed to by at least three commissioners. So what does remedy finding mean? Does that mean recommendations on remedy by different commissioners, or should we look at this as a legal term that means that it's got to be a finding of the commission as a whole? In section 1330 D2 is where the term remedy finding of the commission was introduced. And it's something that was in the 1976 amendment. And this was a subject of considerable argument and discussion by the trial court in the opinion below. And what happened was, before 1976, there was concern that the commission was not issuing majority remedy recommendations in all cases, in a number of cases. And therefore, the statutory congressional override procedure was not available for Congress to act when the president failed to take action after a affirmative commission injury determination. So what Congress did in this 1976 amendment in section 1330 D2 is, for purposes of the we are going to create something called a remedy finding of the commission in cases where there is no majority commission recommendation. And we are going to make this remedy finding of the commission for purposes of the override available in some cases, but not in all cases. It's available as 1330 D2, and the various subsections indicate, where there is a plurality of not less than three commissioners, or where the commission is equally divided three to three. But it is not available under other circumstances. And here, where we only had four commissioners sitting, and a majority, of course, is three commissioners, therefore, if you don't have a majority, you're not going to have a remedy finding of the commission. But the significance, as the legislative history and the language of the statute confirm, is remedy finding of the commission is for purposes of the congressional override in certain situations, but not in other situations. The opinion of the trade court here appeared to suggest that the fast-track authority of Congress wasn't available here because there wasn't a remedy recommendation. Am I reading the opinion correctly? Prior to 1976, there were certain No, no, no. I'm asking about the trade court's decision here. Am I reading it correctly? Right. In this case, there was no recommendation by a commission majority or remedy finding, and therefore Please answer my question. Sorry. My question is, do I read the trade court decision here correctly as saying that because there was no remedy recommendation, the fast-track authority in Congress was not available? Yes, Your Honor. In this case, the congressional override procedure was not available because there was no qualifying remedy finding. We don't have to reach that question, do we? No. Is that really any of our business, whether the Congress can do this or not? Isn't that up to Congress and not to us? And it is up to Congress. And Congress, in Section 1330d-2, made it clear that in some situations, the override procedure would be available. And in other sections, it would not. Other situations would not be available. The other side is arguing that having a remedy finding is important in how you arrive at that decision, because you don't want to be in a situation where there is no congressional override. That one reading of the remedy finding can read out entirely the provision requiring or instituting congressional override. There is a preference in the legislative history for commission majority recommendations in all cases, in all findings. But Congress made it clear in the 1976 legislation that it was only making the remedy finding available in certain situations and not, for example, in the case where there are only four sitting commissioners. And it made clear that we are in the 1976 legislative history that they were not changing the procedures of the commission at all. So there are, inevitably, the way Congress drafted the law in Section 1330d-2, there are going to be some cases where there's neither a majority recommendation or a remedy finding supported by at least three commissioners. And therefore, in those cases, the congressional override procedure would be unavailable. But that's the way Congress drafted the law. But not for us to interpret whether there's a congressional fast-track remedy here, right? I don't. I agree that that's not an issue for the court. OK. Thank you. Yes. Thank you. Thank you. Mr. Stoll, you have almost three minutes. I thank Your Honor. First, the government did not, in its brief, argue that finding a substantial share was a discretionary act by the President, Your Honors. Second, the President did not provide any explanation for his finding that Canadian imports did account for a substantial share in his report. And that's interesting. But he doesn't have to provide an explanation, does he? Your Honor, I think he has to act in a way that's... Even if he did, we could review that, couldn't we? Your Honor, you cannot review either of the facts, but there's no dispute about the facts here or about his rationale. But you can review whether his act on its face is consistent with the statute, whether he has misconstrued the statute. That, again, is a holding of chorus in several other cases. And Your Honor, I think it's worth pointing out the Appendix 846. In that part of the President's report, to my opposition's comments, he specifically talked about a rationale for other FTA partners. He said that in light of the frequency with which producers have moved production of cells and modules, and he talked about other FTA partners, he made no mention of Canadian imports for that being a reason. Third, to Judge Dice's question, Section 312C of the Act specifically provides for what might happen if there is a surge. There's no reason for the President to be acting with respect to a surge here. The statute has already contemplated that specific possibility. With respect to motion systems, Your Honor, that case is a very different case. In that case, for one thing, the President relied on facts. He did no such thing here. Facts outside the record. Secondly, motion systems had to do with issues of the national defense and the national economic interest. That's not a question that can be judicially reviewed, like whether something constitutes a substantial share. Turning briefly to our arguments with respect to Count 1, first, it's very important that in chorus, this Court said that 2252F provides in detail what the Commission report must contain. It must contain a recommendation of the Commission. And that same provision also says that the Commission had to provide an explanation for its recommendation. Your Honor, why is that the case? That's because, as we've been discussing, Congress put into place an override mechanism. Congress wanted to have the ability, when there was a recommendation of the Commission, to have the ability to pass a joint resolution to override the President's actions if they differed from the Commission. The President had to explain in detail, in detail, Your Honors, why he disagreed with the Commission. None of that has been done. To Judge Moore's earlier question, yes, 2251A and 2253A talk about the President acting. But that doesn't mean that the other parts of the statute can be obviated by one specific goal. You have to read the statute as a whole. The President had specific requirements that had to be met. He did not meet them. That is not in dispute. And thus, the President's actions were unlawful. Your Honors, we also respectfully ask that you reconsider our motion for injunction pending appeal. Okay. Thank you, Mr. Sullivan. Thank all counsel. The case is submitted. That concludes our session for this morning.